IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| NAVAGIUM VECTORIUM, LLC, a California limited liability company; OUTFITTER ROTARY LLC, a Delaware limited liability company; and OUTFITTER AVIATION, LLC, a Delaware limited liability company; | Case No. 1:13-cv-00162-CL  ORDER |
| Plaintiffs; | |
| v. | |
| ROGER SUTTON and OUTFITTER AVIATION OREGON, LLC, an Oregon limited liability company; | |
| Defendants. | |
| HADLEY & PECH, INC, a Nevada corporation, | |
| Joined Counterclaim Plaintiff, | |
| v. | |
| OUTFITTER AVIATION, LLC, a Delaware limited liability company, | |
| Counterclaim Defendant. | |

/ / /

Page 1 – ORDER

CLARKE, Magistrate Judge.

Plaintiffs Navagium Vectorium LLC, Outfitter Rotary LLC, and Outfitter Aviation LLC (collectively, "Plaintiffs") bring this action against Defendants Roger Sutton ("Sutton") and Outfitter Aviation Oregon LLC (collectively, "Defendants"). Currently before the Court is Defendants' motion (#84) for summary judgment on Plaintiffs' second and third claims for relief which allege negligence and breach of contract in relation to an airplane crash. For the reasons stated below, Defendants' motion is DENIED.

## BACKGROUND

Sutton managed aircrafts owned by Plaintiffs, including a Cirrus SR22 N155ZS ("Cirrus"). Sutton Aff. ¶ 1. Plaintiffs fell behind in their payments to Sutton. Sutton Aff. ¶ 3. On October 7, 2009, Plaintiffs instructed Sutton to sell the Cirrus in a "fire sale" and apply the proceeds to Plaintiffs' delinquent account. Sutton Aff. Ex. 1.

Sutton located a buyer, Stan Leigh Investments ("SLI"), and negotiated the sale of the Cirrus on Plaintiffs' behalf. Sutton Aff. ¶ 5; Wilson Decl. Ex. 3. The sale was memorialized in a contract between Plaintiffs and SLI dated January 25, 2010. Sutton Aff. Ex. 2. In pertinent part, the contract provided:

> 4.1 The buyer will also wire a deposit of $4,000 directly to the seller for the movement of the airplane to the buyer's location, the Stuart Airport in Florida, prior to the aircraft departing. ... It is agreed that the seller will move the aircraft to the buyer's airport after closing on or before February 8th, 2010 with the expectation of weather or circumstances beyond the pilot's control. ...
> 6 ... It is agreed that the delivery location will be at the KMFR[1] airport. ... Title and risk of loss or damage to the Aircraft shall pass to Buyer at the time of delivery. ...

Sutton Aff. Ex. 2, at 2. Sutton signed the escrow instructions as the seller's broker/agent and arranged for the disbursement of funds received from the sale. Wilson Decl. Ex. 6-7.

---

[1] Rogue Valley-Medford International Airport is known as "KMFR." Sutton Aff. ¶ 2.

Page 2 – ORDER

SLI arranged with Sutton to transport the Cirrus from Medford to Florida. Sutton Aff. ¶ 8. SLI agreed to pay Sutton $4,000 in ferrying fees. Sutton Aff. ¶ 9. Sutton piloted the Cirrus from Medford to Florida. Sutton Aff. ¶¶ 10-11. While in transit, Sutton made an unsuccessful emergency landing. Sutton Aff. ¶ 12. The plane was destroyed. Sutton Aff. ¶ 12. SLI filed suit against Sutton and Plaintiffs to recover the value of the destroyed plane plus the ferrying fee. Sutton Aff. Ex. 5.

## STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. Celotex Corp., 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by FED. R. CIV. P. 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Life Ins. Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. Second Claim for Relief: Negligence

Plaintiffs allege that as a result of Sutton's negligent emergency landing, they were forced to expend $117,758 in attorney's fees and costs to defend themselves against the buyer's ensuing lawsuit. Defendants assert the economic loss doctrine bars Plaintiffs' claim.

Oregon's economic loss doctrine is an exception to the fundamental rule of tort law that all persons may be held liable for negligence if their conduct unreasonably creates a foreseeable risk of harm to others. Harris v. Suniga, 344 Or. 301, 307 (2008). The doctrine is based on the premise that "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." Hale v. Groce, 304 Or. 281, 284 (1987).

The Oregon Supreme Court defines economic loss to mean "financial losses such as indebtedness incurred and return of monies paid," distinguishable from "damages for injury to person or property." Harris, 344 Or. at 310 (citing Onita Pacific Corp. v. Trustees of Bronson,

315 Or. 149, 159 n.6 (1992). Building on that definition, the Oregon Court of Appeals has explained "economic losses" are "financial losses to intangibles," like attorney's fees or lost profits. Harris v. Suniga, 209 Or.App. 410, 418 (2006), aff'd 344 Or. 301 (2008). In this case, the parties do not dispute that Plaintiffs allege only economic damages flowing from Defendants' negligence. Thus, the economic loss doctrine is implicated by their claim.

For a plaintiff to recover in a negligence action based purely on economic loss, she must "show some source of duty outside the common law of negligence, such as a special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard." Harris, 344 Or. at 308 (citations and quotation marks omitted). Here, Plaintiffs present evidence that Sutton owed special duties to Plaintiffs as their agent. Oregon courts have previously categorized principle-agent relationships as "special" for the purposes of the economic loss doctrine. Abraham v. T. Henry Const., Inc., 230 Or.App. 564, 570 (2009), aff'd on other grounds, 350 Or. 29 (2011). In doing so, they have cautioned that whether a relationship qualifies as "special" is a functional, not formal, inquiry. Id. at 571. "[T]he crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur." Strader v. Grange Mutual Ins. Co., 179 Or.App. 329, 334, rev. den., 334 Or. 190 (2002). The key is whether the defendant acted, at least in part, to further the economic interests of the other party. Conway v. Pacific Univ., 324 Or. 231, 236 (1996).

On the record before the Court, it is apparent that Sutton acted as Plaintiffs' agent throughout the sale of the Cirrus and owed Plaintiffs the duties of care and loyalty during that transaction. See Onita Pacific Corp., 315 Or. at 161 ("An agent owes duties of care and loyalty to his or her principal."). The parties were in the kind of relationship that gives rise to a heightened

standard of care. Loosli v. City of Salem, 215 Or.App. 502, 511 n.3 (2007) aff'd, 345 Or. 303 (2008) ("In a principal-agent relationship...there is a heightened duty on the part of and an entrustment of responsibility to the actor...to exercise independent judgment on the principal's...behalf to achieve a desired outcome or resolution.").

What is less clear is whether the parties were still in that relationship at the time of the plane crash. When did Sutton's duties to Plaintiffs terminate? Did Sutton act on Plaintiffs' behalf or in his own interest when he ferried the plane to Florida? What was the scope and timeline of the parties' principal-agent relationship? To answer these questions, Defendants reference Sutton's testimony that he independently contracted with SLI to ferry the plane. Defendants note Plaintiffs' response to an interrogatory bolsters Sutton's testimony by identifying the buyer as the only party who contracted with Sutton to deliver the aircraft. Campanella Aff. Ex. 4, at 4. In response, Plaintiffs point out that the contract Sutton negotiated on their behalf obligated them to transport the plane to Florida. However, they do not offer any affidavits or other evidence to challenge Sutton's statement that, despite the contract terms, he undertook delivery independently.

On the record, it appears that Defendants have a strong defense to Plaintiffs' claims involving the Cirrus. However, the sales contract between SLI and Plaintiffs creates some confusion. Viewing the evidence in the light most favorable to the non-moving party, the Court finds that persisting questions regarding the parties' roles in the plane's trip to Florida — the "particular interaction where the alleged tort...occur[ed]" — preclude summary judgment. Strader, 179 Or.App. at 334. Rather than determine as a matter of law whether Defendants owed Plaintiffs any "special" obligations in relation to the plane's transportation and thus whether

Oregon's economic loss doctrine bars Plaintiffs' negligence claim, the Court will consider these issues during its upcoming bench trial.

## II. Third Claim for Relief: Breach of Contract

Plaintiffs allege Defendants breached their contract by failing to deliver the Cirrus to Florida undamaged. In their summary judgment motion, Defendants argue the parties did not have a contract and thus there was nothing to breach. Sutton contracted directly with SLI to transport the aircraft to Florida. Plaintiffs were not involved in the transaction. Nor did they have any interest in the aircraft at the time of the crash.

As discussed above, Defendants' rendition of the facts is not easily squared with section 4.1 of the sales contract between SLI and Plaintiffs. There, SLI committed to pay $4,000 directly to Plaintiffs for the movement of the plane. Sutton Aff. Ex. 2, at 2. In turn, Plaintiffs agreed to "move the aircraft to the buyer's airport" in Florida. Sutton Aff. Ex. 2, at 2. This contractual language suggests Plaintiffs were indeed involved in the Cirrus' transfer. It is at odds with Sutton's testimony. Because genuine issues of fact remain regarding the parties' obligations as to the plane's transportation, summary judgment is not appropriate.

## ORDER

For the reasons stated above, Defendants' summary judgment motion (#84) is DENIED.

It is so ORDERED and DATED this __19__ day of May 2015.

MARK D. CLARKE
United States Magistrate Judge